(72 South. 444)

No. 20710.

WEST FELICIANA PLANTING CO., Limited, et al. v. BOARD OF CONTROL OF STATE PENITENTIARY.

(June 30, 1916.)

*(Syllabus by the Court.)*

1. VENDOR AND PURCHASER ☞172—SALES— CONSTRUCTION OF CONTRACT—PRICE—INTEREST.

The purchaser owes legal interest on the price from the day of sale if the property sold produces fruits or other income. Rev. Civ. Code, art. 2553.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 349–351; Dec. Dig. ☞172.]

2. VENDOR AND PURCHASER ☞172—SALES— CONSTRUCTION OF CONTRACT—PRICE—INTEREST.

When a plantation is sold at a certain price per acre and the price is paid on an estimated area, with the agreement that a survey is to be made and that, if the actual area exceeds the estimated area, the purchaser is to pay for the excess of area at the rate paid on the estimated area, the purchaser owes legal interest on the price of the excess of area.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 349–351; Dec. Dig. ☞172.]

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Action by the West Feliciana Planting Company, Limited, and others, against the Board of Control of the State Penitentiary. From a judgment for plaintiffs, defendant appeals. Affirmed.

R. G. Pleasant, Atty. Gen., and Harry Gamble, Asst. Atty. Gen., for appellant. Lawrason & Kilbourne, of St. Francisville, for appellees.

O'NIELL, J. On the 27th of March, 1911, the plaintiffs sold to the defendant a tract of land supposed to contain 8,000 acres, comprising Angola, Belleview, Loango, and a part of Lake Killarney plantations, in the Parish of West Feliciana. For the convenience and accommodation of the purchasing board, the latter had taken possession of the

plantations on the 1st of January, 1901, the parties having agreed upon the price, terms, and conditions of the sale. The agreement was that the price should be at the rate of $25 an acre, and that "payment was to be partly cash and partly on terms of credit bearing 5 per cent. interest from January 1, 1901." The exact area being in doubt, however, it was agreed that the board should not pay more than $215,000 if the area exceeded 8,600 acres, and that the board would not be entitled to a diminution of the price of $200,-000 if the area should be less than 8,000 acres.

The deed therefore recited that the purchase price was $200,000, "in deduction and part payment whereof" the purchaser paid $50,000 in cash. "And, for the remainder of said purchase price," gave 30 notes for $5,000 each, "all bearing interest at the rate of 5 per cent. per annum from the 1st day of January, 1901, until paid, being the date on which the said purchaser was placed in possession of the said property under agreement for the present sale."

On the date of the sale, the parties signed a collateral and contemporaneous agreement that the vendors would also sell and the board would buy, at the rate of $25 an acre, the remaining portion of Lake Killarney plantation, as soon as the boundary lines and area should be established and the Attorney General should be satisfied with the vendor's title. The writing also contained the agreement that, in case it should be found that the lands sold on that date contained more than 8,000 acres, the purchaser would pay for the excess area at the rate of $25 an acre; provided the purchaser should not, in any event, pay more than $215,000 for all the land conveyed, and would not be entitled to a diminution of the price of $200,000. The parties agreed to abide by the survey to be made by the state engineers and to accept as correct the area to be computed by them.

The vendors promptly had the unsold portion of Lake Killarney plantation surveyed and perfected their title to it, and for several years endeavored to have the representatives of the Board of Control of the State Penitentiary carry out the agreement to purchase the remaining Lake Killarney land at $25 an acre, and to have the state engineers survey the lands already sold, to determine the excess of purchase price due. Having failed in their efforts to consummate the transaction, the vendors brought this suit to compel the board to accept title to the remaining portion of Lake Killarney plantation at $25 an acre, and to pay, with interest at 5 per cent. from the 27th of March, 1901, the excess of the price due on the lands sold, to be determined by a survey to be made by the state engineers.

The only issues between the parties being the question of area of the lands sold and of the unsold portion of Lake Killarney plantation and the question whether the defendant would owe interest on any excess of price that might be found to be due, the plaintiff and defendant filed an agreement in court, consenting that the judge should issue an order of survey, directing the state engineers to make a survey of the lands sold and a separate survey of the remaining portion of Lake Killarney plantation; and that the case should be submitted for decision on the survey and the written contracts.

The survey made by the state engineers showed that the tract of land sold on the 27th of March, 1901, contained 8,304.75 acres, and that the unsold portion of Lake Killarney plantation contained 114.45 acres. Accordingly, judgment was rendered in favor of the plaintiffs for $7,618.75, the balance due on the purchase price of the land sold, with interest thereon at 5 per cent. per annum from the 27th of March, 1901; and it was further decreed that the defendant should take title to the remaining 114.45 acres in

Lake Killarney plantation and pay the purchase price, $2,861.25, at $25 an acre. The defendant appealed, and complains only of the allowance of interest on the unpaid portion of the price of the land sold on the 27th of March, 1901.

[1, 2] The Attorney General concedes that, inasmuch as the defendant has had possession of the land since the 1st of January, 1901, the plaintiffs would be entitled to interest on the unpaid portion of the purchase price if the excess of area not paid for had produced fruits or revenues. But he contends that this excess of area is in the batture and that it has not been productive. There is no evidence in the record as to whether the batture has or has not been cultivated by the defendant. Be that as it may, the agreement to pay for any excess over 8,000 acres of land at $25 an acre did not refer to any specified part of the land sold. We do not know whether it was the cultivated or uncultivated portion of the land that was of greater area than the parties reckoned it to be at the time of the sale. The property sold was the entire tract of 8,304.75 acres, at $25 an acre. Article 2553 of the Civil Code provides that the purchaser owes interest on the price of the sale if the thing sold produces fruits or any other income. It is not disputed that, in this case, the thing sold produced fruits and revenues. It is not necessary, for the application of the law quoted, that each and every acre of the land should have been productive.

The agreement, that the entire tract of land was to be sold at $25 an acre, and that "payment was to be partly cash and partly on terms of credit bearing 5 per cent. interest from January 1, 1901," meant that whatever portion of the price was not paid in cash would bear interest at the rate and from the date specified. Although the notes given for the unpaid portion of the price that was determined at the time of the sale bore inter-

est from the 1st of January, 1901, the plaintiffs only claim interest from the date of the sale, the 27th of March, 1901, on the excess of price that has since been determined. Our conclusion is that they are entitled to the interest.

The judgment appealed from is affirmed.